**UNITED STATES ex rel. CITY OF ATLANTA, GA., et al. v. STEUART, Director of the Census.**

Court of Appeals of District of Columbia.

Argued Feb. 5, 1931.

Decided March 2, 1931.

980

C. Bascom Slemp, Louis Titus, and Ralph B. Fleharty, all of Washington, D. C., for appellants.

L. A. Rover and J. W. Fihelly, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.

The appellants, as plaintiffs below, petitioned for a writ of mandamus to be addressed to the appellee as Director of the Census, commanding that in all reports, schedules, bulletins, and lists which the director should hereafter publish purporting to give the population of Atlanta, Ga., he shall set forth such population at 360,691, as the true population shown by the census taken by him. An answer contesting the petition was filed by the director, and the issue was heard upon the petition and answer. The lower court denied the writ and dismissed the petition. Whereupon this appeal was taken.

It appears that on June 18, 1929, an act of Congress was passed entitled an act to provide for the fifteenth and subsequent decennial censuses and to provide for apportionment of representatives in Congress. U. S. Statutes, 71st Cong. Public. No. 13, chap. 28 (13 USCA § 201 et seq.). The act provides, among other things, that a census of population shall be taken in the year 1930, in accordance with plans prescribed and approved by the Director of the Census. Section 1 (13 USCA § 201). The census of population shall be taken as of April 1st. Section 6 (13 USCA § 206). The Director of the Census is authorized to make requisition upon the Public Printer for such printing as may be necessary to carry out the provisions of the act, such as blanks, schedules, circulars, and other items, and also, in such editions as the director may deem necessary, preliminary and other census bulletins, and final reports of the several investigations authorized by the act or the prior act to establish a permanent census office. Section 13 (13 USCA § 213).

It was manifestly the legislative intent that the census should include a separate enumeration of the population of cities, for it is provided in section 6 of the act that in any city having two thousand five hundred inhabitants or more under the preceding census, the enumeration of the population shall be completed within two weeks from the commencement thereof. Moreover, it is public history that such a practice has prevailed for many years in the census service.

It appears that on August 17, 1929, about two months after the date of the above enactment by Congress, the Legislature of the state of Georgia passed an act bearing the title, "Atlanta; Incorporation of Municipality so Designated; Cities Included, to be known as Boroughs; Unincorporated Communities Included, etc." Georgia Laws 1929, part 3, title 1, Municipal Corporations, pp. 835 to 843. This act incorporated within the area of the "Municipality of Atlanta," as it had theretofore existed, five other cities, to wit, Decatur, Avondale Estates, Hapeville, East Point, and College Park, and fifteen unincorporated communities. It was provided by section 3 of the act as follows: "That from and after the passage and approval of this Act the charters of the Cities of Atlanta, Decatur, Avondale Estates, Hapeville, East Point and College Park, and all amendments thereto, for the purposes of this act only are respectively amended so that wherever the titles of corporate names of said cities appear the word 'City' shall be stricken and the word 'Borough' inserted in lieu thereof. But it shall not be unlawful to refer to a borough as a city, and when the word city is used either in official documents or in contracts or private writings, such irregularity shall not vitiate, but the reference shall be understood to be to the borough, unless it is plainly intended otherwise."

The act provided that each of the old municipalities should be a borough of the new city, and that each should retain all of the governmental powers which it had previously possessed. Each separate borough, therefore, had the right to levy taxes, issue bonds, and grant franchises or licenses. Each borough also retained its own police powers and its control over its own schools, and generally retained all, or substantially all, of the governmental powers which it had previously possessed. The powers granted to the new city of Atlanta itself were meager, almost negligible, nearly all of the governmental powers being vested in the various boroughs. The act also provided that not earlier than the year 1939 a new charter should be provided for the consolidated municipality, which however should not go into effect until it was voted upon by the various boroughs.

The census enumeration for 1930 disclosed that the population of the "boroughs" constituting the consolidated city of Atlanta, taken separately, was as follows, to wit: Atlanta, 270,366; Avondale Estates, 535; College

Park, 6,604; Decatur, 13,276; East Point, 9,-512; Hapeville, 4,224; Unincorporated Communities Nos. 1 to 15, 56,174; the total population of this area accordingly being 360,691.

It appears that the director will publish a list of cities of the United States, including the city of Atlanta, in the order of their population as the same existed on April 1, 1930, and will continue to issue bulletins and reports showing the population of Atlanta as of said date, and it is his intention to state therein the population of Atlanta as 270,366, followed by the following footnote, to wit: "An Act of the Georgia State Legislature, approved August 17, 1929, provides for the establishment of the 'Municipality of Atlanta' including therein, in addition to the city of Atlanta, five other cities and fifteen unincorporated communities. The Act further provides that 'for the purposes of this Act only' these cities 'shall be known as boroughs' but that it shall not be unlawful to refer to them as cities. The population of the 'Municipality of Atlanta' as thus defined, and of its constituent areas is as follows:

Municipality of Atlanta.......... 360,691

Atlanta city or borough.......... 270,366
Avondale Estates city or borough.. 535
College Park city or borough...... 6,604
Decatur city or borough.......... 13,276
East Point city or borough........ 9,512
Hapeville city or borough........ 4,224
Unincorporated communities, Nos.
  1 to 15....................... 56,174"

The appellants, consisting of prominent citizens and business men of Atlanta, who appear for the city as well as in their own rights, insist that the director in all his bulletins and reports shall publish the population of Atlanta as 360,691, without the addition of the qualifying explanation proposed by him. They allege that the form adopted by the director is misleading and inaccurate and will inflict great and irreparable injury upon Atlanta and its residents. They maintain that the size of a city, as made known by the census, exerts a great influence upon its trade and commerce and upon the value of the property of its citizens. They therefore pray for relief as aforesaid.

In his answer the director explains and defends his action as follows: "The respondent likewise examined the Act of August 17, 1929, and found that the so-called 'Municipality' of Atlanta possessed none of the qualities or characteristics of any other city in the United States. The Act gave to the officials no governing power, nor could said officials levy taxes, issue bonds or enact legislation or ordinances of any kind. The respondent on further examining said Act found that the autonomy and powers of the various boroughs and other political units, contained in the area in question, had not been curtailed or affected in any way whatsoever by the Act of the Georgia Legislature of August 17, 1929. The Act in question did authorize, however, the mayor ex officio and the members of the Common Council, not earlier than 1939, to draft and submit to the Legislature of the State of Georgia a new charter providing for a consolidation of the governments of the constituent boroughs and unincorporated communities into one, but the Act also provided that before any such charter went into effect, it had to be submitted to and be voted on by the various boroughs."

It is our opinion upon the issue thus presented that the Director of the Census is acting within his authority, and that the lower court was right in refusing to issue a peremptory writ of mandamus against him.

■■■■■ It is true as claimed by appellants that cities are municipal corporations created by the authority of the state Legislature; and that municipalities may be consolidated, or portions set off from one and annexed to another, at the will of the Legislature. "The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. * * * The state, therefore, at its pleasure, may modify or withdraw all such powers, * * * expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. * * * In all these respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States." Mount Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699; Hunter v. Pittsburgh, 207 U. S. 161, 28 S. Ct. 40, 46, 52 L. Ed. 151. It follows accordingly that the area of a city and the density of its population are exclusively within the discretion of the Legislature. Kelly v. Pittsburgh, 104 U. S. 78, 26 L. Ed. 658.

■■■■■ Upon the other hand, it must be remembered that the national census is exclusively within the authority of the Congress of the United States, and the Director of the Census has been designated as the administra-

tive agency through which that authority shall be exercised. The director is necessarily invested with discretion in matters of form and procedure when these are not specifically provided for by law, and the exercise of this authority cannot be controlled by state legislation. McCulloch v. Maryland, 4 Wheat. 429, 4 L. Ed. 579; Johnson v. Maryland, 254 U. S. 56, 67, 41 S. Ct. 16, 65 L. Ed. 126.

In this instance the director in the exercise of his discretion has decided that the legislative purposes respecting the census will be best subserved and the public more fully and more correctly enlightened by setting out a detailed statement of the circumstances when reporting the population of Atanta. It is clear that this decision is not arbitrary or capricious, and it follows that the courts have no authority to interfere by mandamus with it.

"Mandamus is employed to compel the performance, when refused, of a ministerial duty, this being its chief use. It also is employed to compel action, when refused, in matters involving judgment and discretion, but not to direct the exercise of judgment or discretion in a particular way nor to direct the retraction or reversal of action already taken in the exercise of either." Wilbur v. U. S., 281 U. S. 206, 218, 50 S. Ct. 320, 324, 74 L. Ed. 809.

The judgment of the lower court is affirmed, with costs.