The BOROUGH OF BETHEL PARK
et al., Plaintiffs,

v.

Maurice STANS in his official capacity
as the Secretary of the Department of
Commerce of the United States of
America, et al., Defendants.

Civ. A. No. 70–1049.

United States District Court,
W. D. Pennsylvania.

Nov. 19, 1970.

Brandt McManus, Brandt & Malone, Pittsburgh, Pa., Fred Speaker, Atty. Gen., Edward Friedman, Counsel General, William H. Colbert, and A. Ralph Ellis, Sp. Asst. Attys. Gen., Harrisburg, Pa., for all plaintiffs.

Smith, Shaw & McClay, Pittsburgh, Pa., for all Congressmen and legislators.

Levy Anderson, City Sol., Philadelphia, Pa., for City of Philadelphia.

Gray Lewis, U. S. Atty., Dept. of Justice, Pittsburgh, Pa., for defendants.

## OPINION

GOURLEY, District Judge:

In this civil action, plaintiffs challenge as contrary to the Constitution and Census Acts of the United States certain procedures established by the Director of the Bureau of the Census for the taking of the 1970 Census. Challenged in particular are the procedures whereby college students, members of the Armed Services stationed in the United States, and inmates of institutions are enumerated as inhabitants of the respective places where their colleges, military bases, or institutions are located.

The original plaintiffs are a political subdivision of Allegheny County, Pennsylvania, the President and Mayor of that political subdivision, a member of the House of Representatives of the General Assembly of Pennsylvania and a member of the House of Representatives of the United States who represents one of twenty-seven Congressional Districts within the State of Pennsylvania. Members of the United States House of Representatives representing the remaining twenty-six Congressional Districts within Pennsylvania have been permitted to intervene as party-plaintiffs. The City of Philadelphia has also intervened as a party-plaintiff. The individual plaintiffs bring the action in their official capacities, in their capacities as Pennsylvania residents and voters, and on behalf of all other similarly situated residents and voters. Defendants are the Secretary of the Department of Commerce, the Director of the Bureau of the Census and the Bureau of the Census.

Plaintiffs seek both declaratory and injunctive relief. The Court is asked to declare the practices of the Director of the Bureau of the Census to be violative of Article I, Section 2, Clause 3 of the Constitution, the Due Process Clause of the Fifth Amendment thereto, and the Census Acts of the United States. Plaintiffs request an injunction restraining the Department of Commerce from adopting and promulgating the compilations obtained from the taking of the 1970 Census, restraining the future use of the designated procedures and compelling a re-taking of the 1970 Census.

The matter presently before the Court is plaintiffs' Motion for a Preliminary Injunction and a Declaratory Judgment. The Court has conducted an evidentiary hearing upon the Motion wherein the testimony of Dr. Conrad F. Taeuber, Associate Director of the Bureau of the Census, was received. Upon review of the evidence, the arguments and briefs of counsel for the respective parties, and the law applicable herein, the Court concludes that injunctive relief should be denied and that a declaratory judgment should be granted in favor of the defendants and against plaintiffs.

The following facts are undisputed. In establishing the methods of enumeration to be utilized in taking the 1970 Census, the Director of the Bureau of the Census has deemed himself governed by Section 2a of Title 2 of the United States Code, which requires the President to submit to Congress on the first day, or within one week thereafter, of the first regular session of the Eighty-second Congress and of each fifth Congress thereafter, a statement "showing the whole number of persons in each State" as ascertained by a decennial census of the population. The phrase "whole number of persons" has been defined historically by the Bureau to include citizens and aliens, persons of voting age and those below voting age, persons who are entitled to vote and those who are not yet entitled to vote, as well as those who have lost the right to vote.

The phrase "whole number of persons in each State" has been interpreted by the Bureau to mean those persons whose usual place of residence was a particular State on the date of the census, including those persons present in a State who had no usual place of residence elsewhere. In the census, each person enumerated in areas within the jurisdiction of the United States is recorded and counted as of his usual place of residence, i. e., the specific address at which he is living on the date of the census. The Bureau's criteria for determining the usual place of residence is as follows: persons are enumerated at the place in which they generally eat, sleep, and work, with persons who are temporarily absent *for a few days or weeks* from such usual place of abode being counted as residents of their usual place of abode. The concepts of "domicile" and "legal residence" are not deemed material. Under the above procedure, the Bureau enumerates a person as a resident of a State where he usually resides, regardless of whether or not he is a "domiciliary" or "legal resident" of that State.

Uniformly applying the aforementioned criteria to college students, in-

mates of institutions, and members of the Armed Services serving at military installations within the United States, the Bureau enumerates these persons respectively as residents of the specific locations where their colleges, institutions, and military installations are located. In the 1940 and previous censuses, college students were counted as residents of their parental homes even though they lived during the better part of the year in the communities where they were attending college. However, the procedure was changed for the 1950 and two subsequent censuses so that college students are now enumerated at the places where they actually live while attending college. Apparently, inmates of institutions and members of the Armed Services serving within the United States always have been enumerated as residents of the places where their institutions and military installations are located.

With respect to persons abroad, the Bureau utilizes the following procedures. In the 1970 Census, military personnel serving abroad, for the first time, have been allocated back to the States constituting their homes of record as shown on listings provided by the Department of Defense. However, such military personnel are not allocated back to any specific addresses within those States. A similar procedure is followed for other Government personnel serving abroad. Private persons working or living abroad, not merely visiting abroad, are not counted.

Plaintiffs challenge the aforementioned procedures as an abuse of statutorily vested discretion and violative of the Constitution. The challenge is premised upon plaintiffs' assertion that persons within the aforementioned categories (college students, institutional inmates, military personnel at home and abroad, Government personnel serving abroad, and private persons living and working abroad) are transients on the date of the taking of the census, all, most, or some of whom have an identifiable home to which they will return

upon relinquishing their transient status, and within which they will live for the greater duration of the decennial period. Plaintiffs claim that the Bureau's practice of enumerating these persons as living at their usual places of residence on the date of the census without ascertaining whether these persons, or a relevant percentage of them, have identifiable home residences is an abuse of discretion and unconstitutional. If these persons do have identifiable home residences, plaintiffs argue, the Bureau is duty bound to enumerate them as of such home residences.

Although plaintiffs assert several grounds upon which jurisdiction allegedly is based, the Court finds that jurisdiction of this action lies under 28 U.S.C. § 1337. Quon v. Stans, 309 F.Supp. 604, 606 (N.D.Cal.1970). A determination of the applicability of other asserted bases of jurisdiction is unnecessary.

The Constitution creates a duty upon the executive branch of the Government to take a decennial census. Article I, Section 2, Clause 3, provides in relevant part:

"Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, *according to their respective Numbers*, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons. The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct." (Emphasis added.)

Amendment 14, Section 2, adopted July 28, 1868, provides in relevant part:

"Section 2. Representatives shall be apportioned among the several States *according to their respective numbers, counting the whole number of persons in each State*, excluding Indians not taxed." (Emphasis added.)

Article I, Section 2, Clause 3 of the Constitution provides for decennial enumerations in general terms and does not specify the details of the enumeration. Authority for the enactment of legislation to carry out the constitutional provision is conferred upon the Congress. The object of the census, as stated in the case of Loughborough v. Blake, 5 Wheat. 317, 320, 5 L.Ed. 98 (1820) is "to furnish a standard by which 'representatives, and direct taxes, may be apportioned among the several states which may be included within this Union'."

The problem before the members of the Constitutional Convention as to the method by which each State was to be represented in the Congress was the subject of much debate. Although it was finally decided that representatives in the lower House would be apportioned among the several States on the basis of the number of people enumerated therein, there is no indication that the members of the Constitutional Convention had in mind any specific criteria by which persons were to be deemed residents of one State rather than another. It is most likely that they thought in terms of an average inhabitant, whose actual location at the time of the census, domicile, and legal residence would be the same. The fringe problem of persons actually living on the date of the census in places other than the places of their domicile or legal residence was not considered.

It would also appear that neither the members of the Constitutional Convention nor the authors of the Fourteenth Amendment were concerned with concepts of "domicile" or "legal residence." On the contrary, other language was used: "according to their respective Numbers" and "counting the whole number of persons in each State."

The references made to certain classes of persons who did not vote, such as slaves, indicate clearly that the enumeration was to be based upon the total population of a State and not merely upon the number of inhabitants of the State

who had met such qualifications as might be required by that State for the privilege of voting, the duty of paying taxes, or the like.

The First Congress enacted on March 1, 1790 the Act (1 Stat. 101) providing for the first decennial enumeration. This Act provided that the marshals of the several districts of the United States were authorized and required to cause the number of "inhabitants within their respective districts" to be taken. Section 5 of that Act provided for enumeration of "every person who shall be an inhabitant of any district, but without a settled place of residence," and for "every person occasionally absent at the time of the enumeration, as belonging to that place in which he usually resides in the United States." There appear to be no interpretations available for the terms of these provisions, which no longer exist in the present census law. However, it appears from these provisions that Congress contemplated the enumeration as inhabitants of a district persons who lived there but who, "without a settled place of residence", could not be expected to have established a domicile or legal residence there. The specific provisions for persons "occasionally absent" indicates an intention to disregard short visits away from the usual residence. The negative inference possibly to be drawn is that persons more than occasionally absent from the usual residence at the time of the census would be expected to be enumerated as of some other district where they might be living.

The provisions of section 5 of the first Census Act were included only in the Acts providing for the first six censuses (1790–1840) and have never reappeared in subsequent census laws. The Act (9 Stat. 428) providing for the Seventh Decennial Census (1850), which was the first Act to omit these provisions, was the subject of much debate, but primarily on the topic of the type of information required in the schedules. This Act was closely scrutinized before its passage, but there is no indication of any intent with reference to absentees, nor any explanation for deletion of the above provisions.

The only other statutory requirements or indications of Congressional intent with respect to the enumeration of persons in one district or another were to be found, until recently, in Section 25(c) of Title 13, U.S.C., which provided that enumerators must " * * * visit personally *each dwelling house* in his subdivision, *and each family therein,* and each individual *living* out of a family *in any place of abode,* * * *."* (emphasis added). However, in order to implement the mail-out, mail-back procedure for the taking of the 1970 Census, subsection (c) was repealed in 1964.

At present, Section 2a of Title 2 U.S. C., concerning the report of the census which the President must transmit to Congress, states in relevant part:

> "On the first day, or within one week thereafter, of the first regular session of the Eighty-second Congress and of each fifth Congress thereafter, the President shall transmit to the Congress a statement showing *the whole number of persons in each State,* excluding Indians not taxed, as ascertained under the seventeenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives by the method known as the method of equal proportions, no State to receive less than one Member." (Emphasis supplied.)

It may be observed that Section 2a reiterates precisely the same expression contained in the Fourteenth Amendment, "the whole number of persons in each State."

█ From the aforequoted constitutional and statutory provisions, it must be concluded that neither the Constitution nor the present congressional enactments prescribe with specificity the criteria by which persons are to be enumerated as residing in one State rather

than another. Rather, this matter must be found to lie within the discretion afforded to the Bureau of the Census by Congress in the Census Acts, which are to be found in Title 13, U.S.C., entitled "Census."

Section 5 of Title 13, U.S.C. provides: "The Secretary shall prepare schedules, and shall determine the inquiries, and the number, form, and subdivisions thereof, for the statistics, surveys, and censuses provided for in this title." Section 141 requires the Secretary to " * * * in the year 1960 and every ten years thereafter take a census of population, unemployment, and housing (including utilities and equipment) as of the first day of April which shall be known as the census date." Section 4 permits the Secretary to delegate the functions and duties imposed on him by Title 13 to other officers and bureau of the Department.

The discretionary function of the Director of the Bureau of the Census was recognized in United States ex rel. City of Atlanta, Ga. v. Steuart, 60 App. D.C. 83, 47 F.2d 979 (1931), a mandamus action brought against the Director of the Census seeking to compel him to publish the population of Atlanta as 360,691, without the addition of the qualifying explanation proposed by the Director, which listed the population of Atlanta exclusive of certain boroughs added by State statute. Plaintiffs alleged that the form adopted by the Director was misleading and inaccurate and would inflict "great and irreparable injury upon Atlanta and its residents." They argued that the size of a city, as made known by the census, exerts a great influence upon its trade and upon the value of the property of its citizens.

In denying plaintiffs' motion for mandamus, the Court stated, 47 F.2d at 981–982:

" * * * it must be remembered that the national census is exclusively within the authority of the Congress of the United States, and the Director of the Census has been designated as the administrative agency through which that authority shall be exercised. *The director is necessarily invested with discretion in matters of form and procedure when these are not specifically provided for by law*, and the exercise of this authority cannot be controlled by state legislation. McCulloch v. Maryland, 4 Wheat. [316] 429, 4 L.Ed. 579; Johnson v. Maryland, 254 U.S. [50] 56, 67, 41 S. Ct. 16, 65 L.Ed. 126." (Emphasis supplied.)

Also, the Attorney General, in an opinion, 41 Ops.Atty.Gen. 31 (1949), upholding the discretion of the Director of the Census to determine the method in which inhabitants of the United States who are abroad on the census date would be enumerated, noted the following, 41 Ops.Atty.Gen. at 33:

"The statutes governing the decennial censuses have uniformly left the actual administration of a great number of necessary details to the judgment and discretion of the Director of the Census. They charge the Director 'to superintend and direct the taking of censuses of the United States.' Section 3 of the act of March 6, 1902, 32 Stat. 51, as amended, 13 U.S.C. 2. They have vested in him broad discretion, with the approval of the Secretary of Commerce, as to the 'number, form, and subdivision of the inquiries in the schedules used to take the census.' Act of June 18, 1929, 46 Stat. 21, 22, 13 U.S.C. 204; act of March 3, 1919, 40 Stat. 1291, 1294; act of February 28 [25], 1910, 36 Stat. 227, 228; act of March 3, 1899, 30 Stat. 1014, 1015. Innumerable problems not unlike the one here in question, which have not been dealt with in the statutes, obviously arise frequently in the taking of censuses. Decisions on such matters have, historically, been made by the Director of the Census, and the Congress has through the years acquiesced in this practice."

Thus, when the Court looks into the allegation that the Secretary of Commerce has abused the discretion vested in him by Congress in Title 13, U.S.C., judicial review is limited to ascertaining whether any rational basis exists for the Secretary's decision. "The Court does not seek to make a de novo determination. It suffices if there was reasonable basis for the executive department to reach its conclusion * * *. The court does not presume to substitute its discretion for that of the Secretary." Duesing v. Udall, 121 U.S. App.D.C. 370, 350 F.2d 748, 752 (1965), cert. denied, 383 U.S. 912, 86 S.Ct. 888, 15 L.Ed.2d 667 (1966); Watson v. Gulf Stevedore Corp., 400 F.2d 649 (5th Cir. 1968); Udall v. Washington, Virginia and Maryland Coach Company, Inc., 130 U.S.App.D.C. 171, 398 F.2d 765 (1968); Warren Bank v. Camp, 396 F.2d 52 (6th Cir. 1968).

In Quon v. Stans, *supra*, plaintiffs sought to enjoin the Bureau of the Census from using the "mail-out, mail-back" method of enumeration in the Chinatown section of San Francisco, alleging that they would not be counted under this procedure. On the issue of judicial review, the Court stated, 309 F.Supp. at p. 607:

> "The court notes that the method, as opposed to the fact, of enumeration under the census is but a procedure and as such within the discretion of the Bureau of the Census. See 41 Ops.Atty.Gen. 31, 33 (Aug. 26, 1949). Cf. United States ex rel. City of Atlanta, Ga. v. Steuart, 60 App.D.C. 83, 47 F.2d 979 (1931). The Director of the Census has exercised that discretion and has done so in a manner not irrational, arbitrary, or capricious. It was his judgment that the method proposed to be used for enumeration was that best fitted to the needs of the 1970 Census and all indications are that the method will in fact insure that plaintiffs are counted. The court finds the Director's judgment to have been properly exercised and will therefore not interfere."

Turning to the procedure established by the Director whereby members of the Armed Services serving within the United States, college students and institutional inmates are enumerated as residents of the places where their respective military installations, colleges and institutions are located, the Court finds that this procedure has a rational basis and represents a proper exercise of discretion. The procedure for enumerating such persons is, in each instance, consistent with the governing principle of the Bureau that persons are to be enumerated at their usual place of residence at the time of the census, that place being the one in which they generally eat, sleep, and work, with persons who are temporarily absent for a few days or weeks from such usual place of being counted as residents of their usual place of abode. Thus, the aforementioned groups of persons are enumerated in the same manner as all other persons, including, for example, a professor who has accepted an appointment to teach at a college for one year but does not know where he will be employed the year thereafter or a businessman who has similarly accepted a one-year appointment at a given location.

The Bureau has rejected as unsatisfactory criteria for enumeration concepts of "domicile," and "legal residence." This is not without justification. Each of these terms connoting a legal status are susceptible of varied definitions in different States and also depending upon the purpose for which the terms are used. To utilize any of these terms susceptible of multiple definitions as criteria for enumeration would be to abandon a uniform standard for the same. Moreover, to determine the legal status of a given individual as a domiciliary or legal resident of a particular State and political subdivision within a State, the census takers would be required to inquire of individuals as to their own judgments as to whether they had acquired such a legal status. Many persons would not be in a position to answer satisfactorily such an inquiry.

The Bureau's governing principle is not without a rational basis. As a matter of the practical administration of the census, the Bureau has found that it can best avoid missing substantial numbers of persons altogether, on the one hand, and the extensive duplication of persons, on the other, by enumerating persons as of their actual place of residence at the time of the census.

Plaintiffs contend, however, that members of the Armed Services within the United States, college students, and inmates of institutions should be enumerated as of their home residences. Home residences, it is contended, could be ascertained from the records of the military installations, colleges and institutions. However, the testimony of Dr. Taeuber evidences that the Bureau has a rational basis for using a method of enumeration other than the one suggested by plaintiffs.

In the case of members of the Armed Forces stationed in the United States, difficulties are presented in enumerating them as of home residences. There are those young men living in their parental home until induction into the Armed Forces and it could be presumed that they will return to their parental home when discharged. There are indications, however, that service in the Armed Forces may lead persons to settle in a different State on discharge. There are, similarly, young men who have left the parental home, who have married and started families. Presumably, they will return to their families, but frequently their service in the Armed Forces means a change of residence for their families, and it is by no means clear that they will return to their previous address. In addition, there are those young men who have left the parental home and who, prior to induction, are living in apartments or rooming houses. To assign them back to these living quarters, now occupied by someone else would raise the disturbing question as to who are the real residents of the living quarters. Finally, persons making a professional career of service in the Armed Forces may not have any real residence other than in the area in which they are serving.

Plaintiffs contend that those servicemen who have left addresses which are occupied by others on the date of the census at least could be counted back to the smallest political subdivision from whence they came. But, if one considers a serviceman who has left, for example, plaintiff-Borough of Bethel Park, the inaccuracy of such a designation is quite apparent. Bethel Park is a suburb within the metropolitan area of the City of Pittsburgh. If the serviceman's previous address in Bethel Park is occupied by another when he leaves the Armed Services, it is not unlikely, should he desire to return to his "home area," that he would seek residence, for example, in the City of Pittsburgh proper. If he did so, he would become a resident of a congressional district, State legislative districts, and political subdivision different from the ones in which he resided in Bethel Park.

To enumerate college students as of home residences has been found no less of a problem by the Bureau. When the Bureau followed a procedure of enumerating college students as residents of their parental homes, there was evidence that a number of college students were reported neither by their families nor by the colleges. Also, college students are a transitional group in the population, and many will not return to the addresses of their parents. Again, as in the case of servicemen, some will not return to their home States. Of those who will return to a home State and even a "home area" within that State there will be, nevertheless, many who acquire residences in congressional and State legislative districts and political subdivisions other than the ones in which they once resided.

Enumerating inmates of institutions as of home residences presents similar and other difficulties. As in the case of servicemen and college students, many will not return to the same address from whence they came. In the case of penal

inmates, many have of record no prior address. Inmates of homes for the aged will assume permanent residences there.

In each of these cases, the persons in question draw upon the services of the communities in which their military installations, colleges and institutions are located. The communities in which these persons are residing must plan and develop their public resources to provide for all residents. No abuse of discretion is found in enumerating these persons as inhabitants of these communities rather than as residents of a presumptive home to which many may not be expected to return. Moreover, there is no reason why different criteria should be applied to these persons than are applied to the population at large, many of which may have a status which may be characterized as equally transient on the date of the census.

Plaintiffs also challenge the methods whereby the Bureau enumerates military servicemen and Government personnel abroad as residents of the States from whence they came and not as residents of any particular address or political subdivision within that State. Enumerating these persons as residents of particular addresses or political subdivisions presents the same problems as previously discussed with regard to military servicemen stationed within the United States and college students. Although military servicemen and Government personnel abroad may not even return to the State from whence they came, unlike military servicemen and Government personnel living within the United States, these persons cannot be enumerated as of any other State. There are presently a large number of members of the Armed Services abroad and the most feasible method of enumerating them as among the population of the United States is to count them back to the States wherein they were residents before entering the Armed Services.

Plaintiffs further challenge the failure of the bureau to enumerate as residents of either a State or home residence private citizens who are living and working abroad. The short of the matter is that the Bureau has no means of locating these people.

On review of the various methods of enumeration challenged here, the Court finds that plaintiffs have failed to establish that these methods are without rational basis. The mere fact that an alternative method of enumeration may exist does not lead to the conclusion that the method employed is arbitrary or any less within the discretion of the Bureau. Nor does the fact that the Bureau has not conducted a statistical survey to determine how many servicemen, college students and institutional inmates in fact return to home States, political subdivisions or addresses compel the conclusion that the methods employed are without rational basis.

Plaintiffs assert that the present methods of enumerating military personnel, college students and institutional inmates fail to meet the objective of Article I, Section 2 of the Constitution, which is that of "making equal representation for equal numbers of people the fundamental goal for the House of Representatives." [1] The methods used, plaintiffs contend, also deny these persons equal protection of the laws in violation of the Due Process Clause of the Fifth Amendment, in that the right of each of them to vote in elections at all levels of government allegedly is subjected to a "debasement or dilution" as a result of the utilization of these methods of enumeration. See Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

Clearly, under the Constitution, total population is a proper basis for the apportionment of both congressional and State legislative districts. Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969); Burns v. Richardson, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609

---

1. Wesberry v. Sanders, 376 U.S. 1, 18, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964).

(1964); Reynolds v. Sims, *supra*; Wesberry v. Sanders, *supra*.

▮ Whether a particular group of persons is to be included in the population base of one State rather than another, or one district rather than another, involves a matter of discretion which is not subject to challenge unless the choice made is prohibited by the Constitution. Burns v. Richardson, *supra*, 384 U.S., at 92, 86 S.Ct. 1286. In the *Burns* case, the Supreme Court was presented with a challenge to the method by which the State of Hawaii apportioned its House of Representatives and sought to apportion its Senate. Hawaii used a registered voter base rather than total population base due to the large number of military personnel stationed at installations concentrated in particular counties in Hawaii. The Court approved the use of the registered voter base upon finding that the registered voters distribution, although not approximating total population distribution, did approximate the distribution of State citizens in Hawaii. The Supreme Court stated at p. 92, 86 S.Ct. at p. 1296–1297:

> "Neither in Reynolds v. Sims nor in any other decision has this Court suggested that the States are required to include aliens, transients, short-term or temporary residents, or persons denied the vote for conviction of crime in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause is to be measured. *The decision to include or exclude any such group involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere.* Unless a choice is one the Constitution forbids, cf., e. g., Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675, the resulting apportionment base offends no constitutional bar, and compliance with the rule established in Reynolds v. Sims is to be measured thereby." (Emphasis supplied.)

The Court believes that the aforequoted language is sufficiently broad to indicate that not only the States have discretion in determining what groups of persons are to be included within an apportionment base but also that the Federal Government has such discretion. Plaintiffs have not shown that the methods of enumeration chosen by the Bureau of the Census are ones which the Constitution forbids.

This matter came before the Court upon plaintiffs' Motion for a Preliminary Injunction and Declaratory Relief. At the conclusion of the evidentiary hearing upon this Motion, counsel for the respective parties agreed that all material facts had been placed before the Court and that the Court should render a final adjudication thereon. The Court will act accordingly.

▮ Declaratory relief will be granted in accordance with this Opinion. Injunctive relief will be denied. Plaintiffs have not prevailed on the merits. Even if plaintiffs had so prevailed, injunctive relief in their favor would be denied as detrimental to the public interest. Taking a new census would result in a loss of over $200 million to American taxpayers. Moreover, reapportionment of the United States House of Representatives could not be accomplished in time for the 93rd Congress, as required by the Constitution and Section 2a of Title 2, U.S.C.

This opinion shall constitute the Court's findings of fact and conclusions of law consistent with Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate order is entered.

## ORDER

Now, this 19th day of November 1970, consistent with the within opinion, it is ordered and decreed that plaintiffs' request for injunctive relief be and the same is hereby denied, it is further ordered that declaratory judgment be and the same is hereby entered in favor of

the defendants and against the plaintiffs, and it is declared:

(1) That the Bureau's procedure of enumerating members of the Armed Services stationed in the United States, college students and inmates of institutions as residents of the places where their military institutions, colleges and institutions are located for purposes of the decennial census is a reasonable exercise of the discretion afforded to the Bureau by the Census Acts and is not violative of either Article I, Section 2 of the Constitution or the Fifth Amendment thereto, and (2) That the Bureau's procedure of enumerating members of the Armed Services and Government personnel abroad as residents of their home States for purposes of the decennial census is a reasonable exercise of the discretion afforded to the Bureau by the Census Acts and is not violative of either Article I, Section 2 of the Constitution or the Fifth Amendment thereto.

It is further ordered that the Clerk of Court send a copy of this Opinion and Order to each party including each intervenor herein, and all counsel of record.