State of UTAH; Michael O. Leavitt, Governor; Olene S. Walker, Lieutenant Governor; Mark L. Shurtleff, Utah Attorney General; L. Alma Mansell, President of the Utah Senate; Martin R. Stephens, Speaker of the Utah House; Mike Dmitrich, Utah Senate Minority Leader; Ralph Becker, Utah House Minority Leader; Orrin G. Hatch, United States Senator; Robert F. Bennett, United States Senator; James V. Hansen, Member of Congress; Christopher B. Cannon, Member of Congress; James Matheson, Member of Congress; Blake J. Russon; Michael Wayne Andersen; Brent McGhie; Jean McGhie, Plaintiffs,

v.

Donald L. EVANS, Secretary of Commerce; William G. Barron, Director, United States Census Bureau, Defendants,

State of North Carolina; Michael F. Easley, Governor; Beverly Perdue, Lieutenant Governor; Roy Cooper, North Carolina Attorney General; Marc Basnight, President Pro Tempore of the North Carolina Senate; James Black, Speaker of the North Carolina House; Patrick Ballentine, North Carolina Senate Minority Leader; Leo Daughtry, North Carolina House Minority Leader; Jesse Helms, United States Senator; John Edwards, United States Senator; Eva M. Clayton, Member of Congress; Bob Etheridge, Member of Congress; Walter B. Jones, Member of Congress; David Price, Member of Congress; Richard Burr, Member of Congress; J. Howard Coble, Member of Congress; Mike McIntyre, Member of Congress; Rob-

in Hayes, Member of Congress; Sue Myrick, Member of Congress; T. Cass Ballenger, Member of Congress; Charles H. Taylor, Member of Congress; Melvin L. Watt, Member of Congress, Intervenors.

No. 2:01CV0023B.

United States District Court,
D. Utah,
Central Division.

April 17, 2001.

Thomas R. Lee, Lindon, Utah; Mark L. Shurtleff, Utah Attorney General, Raymond A. Hintze, Chief Civil Deputy Attorney General, J. Mark Ward, Assistant Attorney General, Utah Attorney General's Office, Salt Lake City, Utah; Gene C. Schaerr, Michael S. Lee, Jay T. Jorgensen, Sidley & Austin, Washington, D.C., for plaintiffs.

Rupa Bhattacharyya, Attorney, Stuart E. Schiffer, Acting Assistant Attorney General, Sandra M. Schraibman, Attorney, Amy M. Allen, Attorney, United States Department of Justice, Civil Division, Federal Programs Branch, Washington, D.C., for defendants.

Tiare B. Smiley, Special Deputy Attorney General, Roy Cooper, North Carolina Attorney General, Edwin M. Speas, Jr., Chief Deputy Attorney General, James Peeler Smith, Special Deputy Attorney General, North Carolina Attorney General's Office, Raleigh, North Carolina; Jathan W. Janove, Janove Baar Associates, L.C., Salt Lake City, Utah, for intervenors.

Before STEPHEN H. ANDERSON, Circuit Judge, DEE V. BENSON, Chief District Judge, and DAVID K. WINDER, District Judge.

## MEMORANDUM OPINION

STEPHEN H. ANDERSON, Circuit Judge.

By constitutional and statutory mandate, the federal decennial Census is conducted, on behalf of Congress, by the Secretary of Commerce who has, in turn, delegated responsibility for conducting the Census to the Director of the Census Bureau. The "number of persons in each State" enumerated by the Director in each Census is used, inter alia, to apportion among the states seats in the United States House of Representatives.

In the 2000 decennial Census, the Census Bureau included within its enumeration for apportionment purposes federal employees living overseas, primarily military personnel and their dependents, but excluded all other Americans living overseas. Among those not enumerated were approximately 11,000 missionaries for the Church of Jesus Christ of Latter-day Saints ("LDS") who were overseas from the state of Utah on eighteen-month or twenty-four-month proselytizing or service missions for their church on Census Day 2000 (April 1, 2000). As a result of the apportionment count calculated on the basis of Census 2000, the State of North Carolina, not the State of Utah, was awarded the 435th seat in the House of Representatives.

Plaintiffs, the State of Utah, its governor, and numerous other elected officials, along with four Utah citizens who were abroad serving as LDS missionaries on Census Day 2000, brought this suit against the Secretary of Commerce and the Director of the Census Bureau for injunctive and declaratory relief, asserting that the Census Bureau's failure to enumerate LDS missionaries living abroad, while including within its enumeration federal employees living abroad, violated various constitutional and statutory provisions. The State of North Carolina and numerous of its elected officials intervened in this action.

This three-judge panel of the United States District Court was convened pursuant to plaintiffs' request under 28 U.S.C. § 2284. Plaintiffs filed a motion for summary judgment. Defendants filed a motion to dismiss or, alternatively, a cross-motion for summary judgment. Intervenors filed a cross-motion for summary judgment. All parties have filed responsive pleadings, along with affidavits and other supporting materials. Defendants have filed an administrative record ("A.R.").

We may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For the following reasons, we grant defendants' and intervenors' cross-motions for summary judgment, and we deny plaintiffs' motion for summary judgment.

## BACKGROUND

The decennial Census is conducted pursuant to the requirement imposed by Article I of the United States Constitution and the Fourteenth Amendment that seats in the United States House of Representatives be "apportioned among the several States according to their respective numbers, counting the whole number of persons in each State." U.S. Const. amend. XIV, § 2; U.S. Const. art. I, § 2, cl. 3. The "counting" of the "number of persons in each State" is accomplished by "actual Enumeration," conducted every ten years, "in such Manner as [Congress] shall by Law direct." U.S. Const. art. I, § 2, cl. 3; *Franklin v. Massachusetts*, 505 U.S. 788, 791, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992).

■ Congress, by means of the Census Act, 13 U.S.C. §§ 1–196, has delegated to the Secretary of the Department of Commerce the responsibility to "take a decennial census of population ... in such form and content as he may determine." 13 U.S.C. § 141(a). The Secretary is assisted in that endeavor by the Director of the Census Bureau who "shall perform such duties as may be imposed upon him by law, regulations, or orders of the Secretary." 13 U.S.C. § 21. The Supreme Court has acknowledged that "the text of the Constitution vests Congress with *virtually unlimited discretion* in conducting the decennial" Census and such wide dis-

cretion commands extraordinary deference. *Wisconsin v. City of New York*, 517 U.S. 1, 19, 116 S.Ct. 1091, 134 L.Ed.2d 167 (1996) (emphasis added). Thus, the Secretary's conduct of the Census must "bear only a reasonable relationship to the accomplishment of an actual enumeration of the population, keeping in mind the constitutional purpose of the census." *Id.* at 20, 116 S.Ct. 1091; *see also United States Dep't of Commerce v. Montana*, 503 U.S. 442, 464, 112 S.Ct. 1415, 118 L.Ed.2d 87 (1992) (noting that Congress's "apparently good-faith choice of a method of apportionment of Representatives among the several States 'according to their respective Numbers' commands far more deference" than state districting decisions).

Under the Census Act, "[t]he tabulation of total population by States ... as required for the apportionment of Representatives in Congress ... shall be completed within 9 months after the census date and reported by the Secretary to the President of the United States." 13 U.S.C. § 141(b). Upon receipt of the Secretary's report, the President:

> shall transmit to the Congress a statement showing the whole number of persons in each State ... as ascertained under the ... decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives

by the method known as the method of equal proportions.

2 U.S.C. § 2a(a). The Clerk of the House of Representatives then sends to "the executive of each State a certificate of the number of Representatives to which such State is entitled." 2 U.S.C. § 2a(b). With respect to Census 2000, the Secretary of Commerce delivered the Census 2000 data to the President on December 28, 2000, and the President, in turn, transmitted the counts to the Clerk of the House of Representatives on January 4, 2001. The Clerk notified Utah of its number of representatives on January 16, 2001.

In conducting the Census, the Census Bureau allocates people to their home states according to their "usual residence." "The term can mean more than mere physical presence, and has been used broadly enough to include some element of allegiance or enduring tie to a place." *Franklin*, 505 U.S. at 804, 112 S.Ct. 2767. However, the term has "continued to hold broad connotations." *Id.* at 805, 112 S.Ct. 2767. The Census Bureau defines it as "the place where a person lives and sleeps most of the time." A.R. at 651.

As the Census Bureau did in the 1970 Census and the 1990 Census, it decided, following various meetings, discussions, hearings, and reports, to enumerate in Census 2000 only those Americans living overseas who were employed by the federal government.[1] For apportionment pur-

---

1. In 1996, the Census Bureau formed a Census 2000 Contingency Committee on Americans Abroad, which produced a report called "Census 2000 Contingency Plan for Enumerating Private U.S. Citizens Overseas." A.R. at 642–55. The Bureau met with various organizations representing Americans living overseas, who urged the Bureau to enumerate all of those Americans. The Bureau ultimately decided not to enumerate those Americans. In a memorandum dated September 28, 1998, the Census Bureau explained its decision as based on the following considerations: data quality (the difficulty in verifying the citi-

zenship and "home of record" of Americans abroad); resource issues (worldwide enumeration of American citizens would be costly in terms of "money, time, staff, equipment, [and] office space"); legal/policy issues (it is difficult to apply the Census Bureau's "usual residence" concept to those whose usual residence is outside the United States); and operational issues (worldwide enumeration of American citizens would require coordination with the State Department and private organizations and entities and would require mas-

poses, federal employees living abroad were allocated to particular states in accordance with their "home of record," as designated in their personnel records. Federal employees living abroad were only counted in Census 2000 for apportionment purposes. As all parties agree, only the resident count (excluding all Americans living overseas, including federal employees) is used for purposes of redistricting, allocating federal funding, and other non-apportionment purposes. Following Census 2000, Utah retained the same number of seats in the House of Representatives that it had before the Census, while North Carolina was awarded an additional seat.

Plaintiffs brought this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the All Writs Act, 28 U.S.C. § 1651; the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA"); the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb–4 ("RFRA"); 2 U.S.C. § 2a; the Census Act, 13 U.S.C. §§ 1–196; the Apportionment Clause, U.S. Const. art. I, § 2, cl. 3; the First Amendment; the Fourteenth Amendment; and the Equal Protection Clause of the Fifth Amendment. They argue that LDS missionaries overseas are similar in all relevant respects to federal employees overseas, and they therefore seek a declaratory judgment that "the Census Bureau's disparate treatment of similarly-situated citizens" violates the APA, RFRA, Title 2, and the Census Act, as well as the Apportionment Clause and the First, Fourteenth and Fifth Amendments to the Constitution. Pls.' Second Am. Compl. for Declaratory and Injunctive Relief at 18–19. They also seek "an injunction requiring Defendants to apply the 'usual residence' rule to the temporarily absent LDS missionaries who were undercounted in the 2000 census, or, in the alternative, ... an injunction requiring Defendants to remove

the other temporarily absent citizens from the apportionment count." *Id.* at 19. As indicated above, the result which plaintiffs seek by these proposed remedies would be an order requiring the Census Bureau to either include LDS missionaries in the apportionment count, or exclude all federal overseas employees from the apportionment count, thereby giving Utah an additional representative seat and denying North Carolina such a seat.

## DISCUSSION

We begin by noting that, as plaintiffs' counsel conceded at the hearing on the motions for summary judgment, plaintiffs have not pursued their equal protection argument. We therefore do not address that issue. We turn, therefore, to the remaining three claims.

### I. APA Claim

■ Plaintiffs seek to challenge as arbitrary and capricious under the APA the Census Bureau's conduct in connection with Census 2000. To satisfy the statutory standing requirements of the APA, plaintiffs "must establish that defendants took 'final agency action for which there is no other adequate remedy in court.'" *Colorado Farm Bureau Fed. v. United States Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir.2000) (quoting 5 U.S.C. § 704). "Whether federal conduct constitutes final agency action within the meaning of the APA is a legal question." *Id.* The Supreme Court's decision in *Franklin v. Massachusetts*, 505 U.S. 788, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) forecloses plaintiffs' APA claim.

In *Franklin*, Massachusetts challenged the apportionment determination following the 1990 Census, in which federal overseas employees were counted, and which result-

sive worldwide publicity campaign). A.R. at 1013–15.

ed in Massachusetts' loss of a Congressional seat. A three-judge panel of the district court held that the inclusion of such federal overseas employees was arbitrary and capricious under the APA. On appeal, the Supreme Court reversed, holding, with respect to Massachusetts' APA claim, "[b]ecause it is the President's personal transmittal of the report to Congress that settles the apportionment, until he acts there is no determinate agency action to challenge." *Franklin*, 505 U.S. at 799, 112 S.Ct. 2767. Because the President is not an agency, there was no statutory standing to challenge the apportionment under the APA. That decision controls, and we are unpersuaded by plaintiffs' attempts to distinguish *Franklin*.[2]

## II. RFRA and First Amendment Free Exercise Claims

Plaintiffs[3] argue that the Census Bureau's exclusion of LDS missionaries from the apportionment count, while including federal employees overseas, violated both RFRA and the Free Exercise Clause of the First Amendment because it burdened the exercise of their religious practice of serving on missions abroad. We disagree.

■ Under the Free Exercise Clause, "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, and it is invalid unless it is justified by a compelling interest and is narrowly *tailored to advance that interest.*" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (citations omitted). However, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* at 531, 113 S.Ct. 2217. Under RFRA, the "[g]overnment shall not substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb–1(a); *see also Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001).[4] Thus, both causes of action require a demonstration that the Census Bureau's decision as to which groups of overseas Americans to enumerate burdened plaintiffs' exercise of religion. *See Branch Ministries v. Rossotti*, 211 F.3d 137, 142 (D.C.Cir.2000) ("To sustain its claim under either the Constitution or [RFRA], [plaintiff] must first establish that its free exercise right has been substantially burdened.").

■ Plaintiffs allege, and we accept their assertion as true, that missionary

---

**2.** Plaintiffs attempt to distinguish *Franklin* by arguing that they are not simply challenging the decision to include federal overseas employees in the apportionment count, as Massachusetts did in *Franklin*, but rather "the discriminatory policy of including such employees while at the same time *excluding*—and refusing even to gather reliable data on—similarly situated individuals temporarily living abroad." Pls.' Reply Mem. at 78. However, *Franklin* itself refutes this distinction. The *Franklin* majority explicitly noted that the President "is not expressly required to adhere to the policy decisions reflected in the Secretary's report." *Franklin*, 505 U.S. at 799, 112 S.Ct. 2767. It is the President's ability to "reform the census" and revisit the Secretary's policy decisions that makes the Secre-

tary's report to the President "more like a tentative recommendation than a final and binding determination." *Id.* at 798, 112 S.Ct. 2767. The President had that ability following Census 2000, no less than he did in *Franklin* with respect to the 1990 Census.

**3.** Plaintiffs concede that only the four LDS missionary plaintiffs have standing to bring their RFRA and Free Exercise claims.

**4.** While *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), held RFRA unconstitutional as applied to the states, the Tenth Circuit recently held that RFRA remains constitutional and applicable to the federal government. *See Kikumura*, 242 F.3d at 959–60.

work "is one of the most basic and important obligations of the LDS faith." Worthen Decl. at 2. Only one of the four LDS missionary plaintiffs has filed an affidavit in support of their motion for summary judgment. Plaintiff Michael Wayne Anderson's affidavit states that he was away from Utah serving a two-year mission on April 1, 2000, and that he sincerely believes that "performing missionary work ... is one of my most important obligations as a member of the LDS Church." Anderson Aff. ¶ 4.

The question, however, for purposes of RFRA and the Free Exercise Clause, is whether the Census Bureau's decision not to enumerate non-federal-employee Americans abroad on April 1, 2000, in any way burdened, or even tended to burden or coerce, Mr. Anderson's free exercise of his religious belief in the performance of missionary work. Plaintiffs present no evidence at all that it did. Mr. Anderson's affidavit does not mention the Census, nor indicate that he was even aware of the upcoming Census when he decided to serve his mission. Moreover, at the time Mr. Anderson decided to serve his mission, he did not know, nor could he know, whether the Census Bureau's failure to enumerate him would have any effect at all on the apportionment of House of Representative seats to Utah.

In sum, plaintiffs present nothing more than conclusory and completely speculative allegations that their practice of religion or religious beliefs were burdened in any way by the Census Bureau's decision not to enumerate LDS missionaries who were abroad on Census Day 2000. Conclusory allegations are insufficient to withstand summary judgment. We therefore grant summary judgment to defendants and intervenors on plaintiffs' RFRA and Free Exercise claims.

## III. Apportionment Clause and Census Act Claims

As indicated, the Apportionment Clause of the Constitution, as amended by the Fourteenth Amendment, requires an "actual Enumeration" of the "whole number of persons in each State." U.S. Const. amend. XIV, § 2; U.S. Const. art. 1, § 2, cl. 3. The Census Act requires a "decennial census of population." 13 U.S.C. § 141(a). Plaintiffs argue that the Census Bureau violated these requirements when it included in Census 2000 only a small subset of the entire American overseas population (those who work for the federal government) while excluding similarly situated Americans overseas (LDS missionaries).

Plaintiffs' second amended complaint seeks one of two injunctive remedies for these alleged violations: either include LDS missionaries in the apportionment count, or exclude federal overseas employees.[5] Plaintiffs seek a declaration that the Census Bureau must treat all "similarly situated" overseas Americans alike. We explore each claim in turn.

### A. Inclusion of LDS missionaries

■ Plaintiffs argue that, if federal overseas employees are counted in the apportionment count, LDS missionaries must be as well because they are similarly situated to federal overseas employees. They

---

5. In their reply brief, plaintiffs attempted to broaden the remedy they sought to include the following possibility: "the addition of all overseas Americans, including LDS missionaries, who can be counted using existing administrative records similar to those used to count federal employees." Pls.' Reply Mem. at 3. However, as their counsel acknowledged at the summary judgment hearing, they did not seek this broader relief in their second amended complaint, nor have they sought to further amend their complaint. Counsel accordingly acknowledged, as he must, that plaintiffs are bound to seek only the relief sought in their latest complaint.

argue that *Franklin* holds that the Census Bureau must include any group of overseas Americans that, like federal employees overseas, retains ties to particular states and can in fact be reliably counted. We disagree.

As *Franklin* made clear, the "constitutional goal" underlying the Apportionment Clause is "equal representation." *Franklin,* 505 U.S. at 806, 112 S.Ct. 2767. We accordingly evaluate the propriety of the Census Bureau's exercise of the broad discretion granted it in apportionment decisions with that goal in mind.

All parties agree that we do not know with any certainty the number and distribution of non-federal-employee Americans living overseas at any particular time. Kenneth Prewitt, the Director of the Census Bureau at the time, estimated in 1999 that there were five million such Americans. A.R. at 1200.[6] Thus, it is indisputable that the 11,159 LDS missionaries from Utah were a very small proportion of the total universe of non-federal-employee Americans abroad for various reasons on April 1, 2000. However, of all LDS missionaries abroad on April 1, 2000 (24,251), a hugely disproportionate number of them (46%) were abroad from Utah. *See* Swensen Aff., Ex. A.

Plaintiffs would have us now direct the Census Bureau to enumerate, out of the entire universe of non-federal-employee Americans abroad on April 1, 2000, only LDS missionaries, a course of action which would overwhelmingly favor Utah vis-a-vis all forty-nine other states. Given that the goal of apportionment is "to achieve a fair apportionment *for the entire country,*" *United States Dep't of Comm. v. Montana,* 503 U.S. 442, 464, 112 S.Ct. 1415, 118 L.Ed.2d 87 (1992) (emphasis added), commanding the enumeration of one group from one state obviously fails to further the constitutional goal of "equal representation." Indeed, inclusion of one such group to the clear advantage of one state would seem to undermine another goal of the Apportionment Clause, which is distributive accuracy. *See Wisconsin,* 517 U.S. at 20, 116 S.Ct. 1091 ("[A] preference for distributive accuracy (even at the expense of some numerical accuracy) would seem to follow from the constitutional purpose of the census, viz., to determine the apportionment of the Representatives among the States."). Moreover, were we to direct the Census Bureau to enumerate only LDS missionaries, we can easily envision constitutional challenges to that decision from other groups of Americans abroad for religious or other purposes, including students studying abroad, employees of companies with overseas offices, retirees, and numerous other groups who are overseas for charitable, humanitarian, or any number of other reasons.[7]

Were we to declare that any group of American citizens temporarily abroad, with ties to a particular state and an apparent intention to return to that state, could

---

**6.** He noted, however, that estimates varied from three million to ten million. A.R. at 1200.

**7.** The concurring opinion misapprehends our basis for reaching this conclusion. It assumes that LDS missionaries are similarly situated to overseas federal employees, and that, as a result, the disproportionate distribution is irrelevant. This overlooks the fact that LDS missionaries, a tiny fraction of the entire overseas population of five million or so, are

not so similarly situated for several reasons, including the very fact that such missionaries are so disproportionately distributed among the states. As indicated in the text, distributive accuracy and proportionality are important goals of the Census. *See Wisconsin,* 517 U.S. at 20, 116 S.Ct. 1091; *Montana,* 503 U.S. at 464, 112 S.Ct. 1415. Accordingly, inclusion of a single group which so clearly and dramatically distorts distributive accuracy, to the benefit of one state, is impermissible.

offer itself up for enumeration and the Census Bureau must enumerate them, we would be compelled to require that the decennial census conducted in 2000 be re-taken.[8] As plaintiffs' counsel conceded at the summary judgment hearing on this case, that is a practical, if not an actual, impossibility and a remedy which plaintiffs admittedly do not seek. We therefore deny plaintiffs' request to require the Census Bureau to enumerate LDS missionaries who were abroad on April 1, 2000.

### B. Exclusion of federal overseas employees

■ Plaintiffs' alternative remedy for their claimed Apportionment Clause/Census Act violation is to have us order the Census Bureau to exclude all federal overseas employees and their dependents from the apportionment count derived from Census 2000. Such a remedy would entail requiring the Census Bureau to recalculate the apportionment count for all fifty states and resubmit that count to the President.

We conclude that a fair reading of *Franklin* precludes that remedy.

In *Franklin*, Massachusetts challenged the Census Bureau's policy of including overseas federal employees in the apportionment count on the ground that doing so "violated the command of Article I, § 2, cl. 3, that the number of Representatives per state be determined by an 'actual Enumeration' of 'their respective Numbers,' that is, a count of the persons 'in' each State." *Franklin*, 505 U.S. at 803, 112 S.Ct. 2767. The inclusion of overseas federal employees for apportionment purposes had resulted in Massachusetts actually losing a representative seat. The Supreme Court rejected Massachusetts' challenge on its merits:

In this case, the Secretary of Commerce made a judgment, consonant with, though not dictated by, the text and history of the Constitution, that many federal employees temporarily stationed overseas had retained their ties to the States and could and should be counted

---

8. As the record in this case indicates, there are a host of well-documented problems with attempting to enumerate all Americans living abroad. *See* n. 1, *supra*. Additionally, on June 9, 1999, Kenneth Prewitt, the Director of the Bureau of the Census, gave a prepared statement before the Subcommittee on the Census, Committee on Government Reform, United States House of Representatives ("Prewitt Statement"). He reported that the Census Bureau had concluded, after careful review and study, that "it cannot credibly enumerate the population of American citizens living abroad." Prewitt Statement at 2. He listed the following problems in trying to enumerate those Americans overseas: obtaining accurate data, particularly without a control mechanism to permit follow-up for non-respondents, which would effectively make a census of Americans overseas voluntary and therefore subject to manipulation; validation and verification of information obtained, including preventing duplication and identifying the home state; operational complexity; and cost.

Were we to adopt plaintiffs' suggestion that the Census Bureau can use the records of private organizations like the LDS Church, we discern additional problems in identifying and applying criteria to evaluate the reliability of such records. Although the LDS Church asserts it keeps meticulous records about its overseas missionaries, in order to discharge its own independent obligation to conduct the census, the Census Bureau would nonetheless have to develop some way of verifying the reliability of the information contained in such records. If we compel the Census Bureau to proceed in that direction, it will encounter multiple problems attempting to verify the records of myriad private organizations, each with different records and record-keeping practices and capabilities, in addition to inconsistencies relating to the willingness of such organizations to identify themselves, cooperate, and not mount challenges among themselves, the various states, and the Census Bureau.

toward their States' representation in Congress.... The Secretary's judgment does not hamper the underlying constitutional goal of equal representation, but, assuming that employees temporarily stationed abroad have indeed retained their ties to their home States, actually promotes equality.

*Id.* at 806, 112 S.Ct. 2767.

Plaintiffs argue they are not challenging simply the inclusion of federal overseas employees; rather, they are challenging the inclusion of those individuals with the simultaneous refusal to include a group (LDS missionaries) whom they argue is similarly situated in all relevant respects to federal overseas employees. They argue that distinguishes this case from *Franklin*. We disagree.

It is true that the Court in *Franklin* was specifically presented only with the question of whether the Census Bureau acted rationally and consistently with the constitutional goal of equal representation when it decided to include for apportionment purposes federal employees overseas. It was not explicitly presented with another group of Americans abroad claiming to be similarly situated to federal employees and seeking on that basis to be enumerated.[9] However, the Court obviously knew that federal employees were not the only group of Americans abroad, and that, by enumerating them, the Census Bureau only enumerated a subset of Americans abroad. Thus, it was implicit in *Franklin* what is explicit here: federal employees overseas are one subset of the entire universe of overseas Americans. We conclude that, for several reasons, with respect to their request that we require the Census Bureau to exclude from the apportionment count federal overseas employees, plaintiffs cannot distinguish this case from *Franklin*.

First, plaintiffs interpret *Franklin* to stand simply for the proposition that, if there is a group of overseas Americans that have retained ties to a particular state or states and are countable, they must be enumerated for apportionment purposes. Moreover, they argue *Franklin* did not *require* the inclusion of federal overseas employees. So, the argument goes, we are not *compelled* to include them. We do not read *Franklin* in that limited a way. In *Franklin*, the enumerated group happened to be federal employees, and the Court did note that the Census Bureau rationally concluded that they retained ties to particular states and could be dependably counted.

Although those two factors are important, however, the Court did not rely on those two features alone when it upheld the Census Bureau's enumeration of those employees. Rather, the Court acknowledged that federal employees are a unique subset of Americans abroad. It noted that there were several reasons why the Census Bureau decided to include them for apportionment purposes. Not only was there bipartisan Congressional support for inclusion of such employees, but also there was a belief that such employees "should not be excluded from apportionment counts because of temporary and involuntary residence overseas." *Franklin*, 505 U.S. at 793, 112 S.Ct. 2767 (quotation omitted). The involuntariness of their overseas posting, at the behest of their government, differentiates most federal

9. The very same argument plaintiffs make (that the Census Bureau could not include American federal overseas employees while excluding other non-federal-employee Americans overseas) was made in *Borough of Bethel Park v. Stans,* 449 F.2d 575 (3rd Cir.1971).

The court rejected that argument, holding it was a proper exercise of the Census Bureau's discretion in conducting the 1970 Census to enumerate federal employees overseas but not other groups of Americans abroad.

employees from most non-federal employees living overseas.

Second, the Court expressly stated that inclusion of federal employees for apportionment purposes "does not hamper the underlying constitutional goal of equal representation." *Id.* at 806, 112 S.Ct. 2767. Federal overseas employees come from all fifty states, and presumably are apportioned throughout the entire fifty states. Moreover, the evidence presented in this case indicates that, while the distribution of federal overseas employees among the fifty states does not precisely mirror the distribution of resident state populations, it also does not present any extreme variations among the states. Thus, we do not have a situation where one state, or a group of states, is greatly advantaged or disadvantaged, compared to the remaining states, by the inclusion of its federal overseas employees.[10] Inclusion of federal employees, unlike the inclusion of various other groups of private American citizens abroad, does not invite the kind of manipulation by states or the injection of local or parochial bias which the founders wished to avoid.

Third, even if inclusion of federal overseas employees causes a different apportionment than would a count of only the resident population, that is not necessarily a constitutional violation. Indeed, that is precisely what happened in the *Franklin* case: Massachusetts lost a seat when the federal overseas count was added to the resident count for apportionment purposes. Thus, *Franklin* makes clear that it is constitutionally permissible if the federal employee overseas count does not mirror the resident count, and it is constitutionally permissible if inclusion of such employees for apportionment purposes actually affects the apportionment of representatives.

Finally, federal employees overseas are uniquely susceptible to being accurately counted because the Census Bureau has access to data about those individuals which is different both in quality and quantity from the data available about other Americans overseas. It has access to records maintained in the ordinary course of business by the government with respect to the government's own employees. As the evidence presented in support of the summary judgment motions indicates, there is simply no other group which can be as readily identified and dependably counted as federal employees overseas.

In sum, *Franklin* held that the Secretary of Commerce's decision to enumerate federal employees overseas was "consonant with, though not dictated by, the text and history of the Constitution." We cannot say that the same decision made for Census 2000 was anything other than a rational exercise of the Secretary's discretion, delegated to the Census Bureau, to conduct its obligation to enumerate the population for apportionment purposes. Accordingly, we decline plaintiffs' request to require the Census Bureau to exclude federal overseas employees from the apportionment count.

For the foregoing reasons, we GRANT the defendants' and intervenors' motions for summary judgment and DENY the plaintiffs' motion for summary judgment. The clerk is directed to enter judgment accordingly.

BENSON, District Judge, Concurring.

I concur in Sections I and II of the majority opinion and in the result reached

---

**10.** Thus, the dramatic advantage to Utah, alone among the fifty states, which would follow from the inclusion of LDS missionaries, stands in stark contrast to the much more modest proportional divergences between the federal employee overseas count and the resident count.

in Section III. I write separately because in my view the discussion in Section III goes too far. The only finding necessary to our decision is that the Census Bureau had a rational basis for the manner in which it carried out the 2000 Census, and therefore did not abuse its discretion in deciding not to count any overseas Americans beyond U.S. government employees. That is all we need say, and any analysis should be limited to that issue. In dicta, however, the majority opinion reaches issues removed from and unnecessary to our holding.

In Section III, the majority unnecessarily discusses possible problems with the remedies sought by the plaintiffs. I see no reason to express an opinion on these remedies because we have already determined there is no liability. For example, the majority suggests that there may be something wrong with the inclusion of LDS missionaries in the census because Utah has more LDS missionaries serving abroad than other states. This dictum is unnecessary to our decision. Furthermore, I disagree with it. If for some reason in the future the census takers determine to include overseas LDS missionaries, which in their discretion they may choose to do for a variety of reasons, I see nothing constitutionally or otherwise impermissible in doing so merely because a large number of them are from Utah. In this regard, I find it significant that the inclusion of overseas government employees does not precisely mirror the domestic count for apportionment purposes. Indeed, the only reason the plaintiffs filed *Franklin v. Massachusetts*, 505 U.S. 788, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992), was because the inclusion of military personnel favored Washington over Massachusetts, with the former gaining a congressional seat and the latter losing one for that reason alone. Yet the United States Supreme Court found no error in that practice. Similarly, I see no legal significance in the fact that the possible inclusion of overseas LDS missionaries in future censuses may give a proportionately greater count to Utah than to other states.